UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| JAMAAL JOHNSON, | ) | |
| Petitioner, | ) | |
| | ) | 3:10-cv-00610-RCJ-VPC |
| vs. | ) | |
| | ) | |
| E.K. McDANIEL et al., | ) | **ORDER** |
| | ) | |
| Respondents. | ) | |

This is a habeas corpus Petition pursuant to 28 U.S.C. § 2254. Before the Court is Respondents' Motion to Dismiss (ECF No. 35).

## I.   PROCEDURAL BACKGROUND

On December 20, 2001, the State of Nevada (the "State") charged Petitioner with six crimes: burglary while in possession of a firearm, conspiracy to commit robbery, two counts of robbery with the use of a deadly weapon, and two counts of murder with the use of a deadly weapon. (Ex. 5).[1] On February 15, 2002, the State filed an information charging the same six counts. (Ex. 4).

On February 28, 2003, Petitioner filed a motion to suppress his confession. (Ex.14). On June 13, 2003, Petitioner filed an amended motion for discovery of prosecution files, records, and

---

[1] Unless otherwise noted, the exhibits referred to in this Order are Respondents' exhibits, ECF Nos. 10–24.

information. (Ex. 1). On August 6, 2003, the state district court held a hearing on the motion to suppress. (Ex. 33). At the hearing, in preparation for the August 11, 2003 trial, the parties discussed the newly-discovered evidence from Monique Morris and the defense's request to suppress a copy of Tony Carr's plea agreement. After hearing testimony, the court denied the motion to suppress. (Ex. 33). The jury trial took place August 11, 2003, through August 15, 2003. (Exs. 33–42). On the first day of trial, prior to jury selection, defense counsel renewed the motion to exclude the testimony of Monique Morris because she had made an audiotape and a videotape which defense counsel had not seen. The State explained that the videotape was in possession of the U.S. Attorney's Office and that the U.S. Attorney would not turn the tape over to the State. The State explained that Monique had entered into a negotiation with the federal government and had signed a guilty plea agreement but that the negotiation "did not entail her testimony" in Petitioner's case. The state district court denied the motion to exclude the testimony of Monique Morris. (Ex. 35). Defense counsel also moved to exclude the testimony of Tony Carr because counsel had not seen Carr's federal guilty plea agreement, which was also under seal. The defense suspected that Carr might have received some leniency from the U.S. Attorney for testifying in petitioner's case. The State explained that the U.S. Attorney's Office had refused to honor the State's subpoena and that the State had made no agreement with Carr in exchange for his testimony. (Ex. 35). The motion to exclude the testimony was denied. (*Id.*).

On August 15, 2003, the jury found Petitioner guilty on all six counts. (Ex. 40). Petitioner waived his right to be sentenced by the jury. (Ex. 41).

On August 26, 2003, Petitioner filed his first motion for a new trial based on alleged juror misconduct related to an August 15, 2003 Las Vegas Review Journal article and television newscasts that reported the U.S. Attorney had issued arrest warrants for members of the "Rolling 60's" gang. The defense alleged:

> At the time the defense attorney was informed that members of the jury had in fact reviewed the newspaper article and in fact listened to some of the newscasts of the

1  case. Further the defense attorney was informed that the jury had seen some television
2  newscasts where it indicated that Jamaal Johnson was a member of the Rolling 60's street gang.

3 (Ex. 43). On September 9, 2003, the state district court heard and denied the motion for a new trial.

4 (Exs. 48, 50).

5     The state court sentenced Petitioner on October 2, 2003. On October 29, 2003, Petitioner's

6 newly-appointed counsel filed a notice of appeal "from the oral judgment of conviction entered in

7 this action on October 2, 2003." (Ex. 57).

8     The judgment of conviction was filed on November 20, 2003, and Petitioner was sentenced

9 as follows: Count I, burglary while in possession of a firearm, 72–180 months; Count II, conspiracy

10 to commit robbery, 24–72 months; Count III, robbery with the use of a deadly weapon, 72–180

11 months, plus an equal and consecutive term of 72–180 months for use of a deadly weapon; Count

12 IV, robbery with the use of a deadly weapon, 72–180 months, plus an equal and consecutive term of

13 72–180 months for use of a deadly weapon; Count V, murder with the use of a deadly weapon, life

14 without the possibility of parole, plus an equal and consecutive term of life without the possibility of

15 parole for use of a deadly weapon; Count VI, murder with the use of a deadly weapon, life without

16 the possibility of parole, plus an equal and consecutive term of life without the possibility of parole

17 for use of a deadly weapon. (Ex. 60). Counts I, II, and III were to run concurrently, and Counts III,

18 IV, V, and VI were to run consecutively. (*Id.*) Petitioner received 654 days of credit for time served.

19 (*Id.*).

20     Attorney Lisa Rasmussen was appointed as Petitioner's appellate counsel. (Ex. 67).

21 Petitioner filed a motion to stay the appeal briefing schedule so he could file a motion for a new trial.

22 (Ex. 76). On August 3, 2004, the Nevada Supreme Court denied the motion to stay the direct appeal

23 briefing schedule. (Ex. 85). On September 7, 2004, Petitioner filed his opening brief, which

24 contained five claims: (1) Petitioner's confession/statement was involuntary; (2) the State committed

25 prosecutorial misconduct by eliciting inadmissible hearsay statements; (3) the trial court erroneously

26 interviewed jurors in unrecorded bench conferences, dismissed jurors without advising either party

1  of the basis for dismissal, and refused to grant Petitioner's motion for a new trial based on jury
2  misconduct; (4) the trial court erroneously applied deadly-weapon enhancements to the robbery and
3  murder sentences because these offenses grew out of a conspiracy; and (5) cumulative error. (Ex.
4  94). On July 11, 2005, the Nevada Supreme Court issued an order affirming the conviction. (Ex.
5  104). Remittitur issued on August 5, 2005. (Ex. 111).

6  On July 12, 2005, Petitioner filed his second motion for a new trial in the state district court,
7  (Exs. 105–09), alleging newly discovered evidence, prosecutorial misconduct, and violations of
8  *Brady* and the Confrontation Clause stemming from Demarco Parker's criminal history, the federal
9  government's agreement to refrain from seeking the death penalty against Parker in exchange for his
10 guilty plea, his grand jury testimony, his statements to the FBI, Monique Morris's criminal history,
11 her federal plea agreement, the benefits Morris received for pleading guilty, her grand jury
12 testimony, and her statements to the FBI. (Exs. 105, 147). On November 3, 2005, the state district
13 court denied the motion after an October 18, 2005 hearing. (Exs. 114, 117). Petitioner appealed the
14 denial of his second motion for a new trial. (Ex. 116). Petitioner raised eight claims, including: (1)
15 the court erroneously permitted the testimony of Demarco Parker and Monique Morris for whom no
16 *Brady* material was provided; (2) due to *Brady* violations, Petitioner was unable to conduct
17 meaningful cross-examination of Demarco Parker and Monique Morris; (3) the State engaged in
18 prosecutorial misconduct by failing to produce *Brady* material and by procuring false testimony
19 from Monique Morris and Demarco Parker; (4) the State engaged in post-trial prosecutorial
20 misconduct by failing to disclose *Brady* material; (5) the State engaged in prosecutorial misconduct
21 and the court erred by preventing Petitioner's counsel from obtaining discovery necessary to his
22 motion for a new trial; (6) the court erred in denying Petitioner's motion for a new trial by applying
23 the wrong legal standard; (7) the jury instructions that provided alternate theories of liability, one of
24 which was impermissible absent a finding of specific intent, was impermissible under *Bolden v.*
25 *State*; and (8) cumulative error. (Ex. 135). On November 22, 2006, the Nevada Supreme Court
26 affirmed the denial of Petitioner's motion for a new trial. (Ex. 147). Petitioner filed a motion to

4

1  allow rehearing, which the Nevada Supreme Court granted on July 9, 2007. (Exs. 149–50). On July
2  9, 2007, Petitioner filed a petition for rehearing, which the Nevada Supreme Court denied on
3  November 13, 2007. (Exs. 151, 154). Remittitur was issued on December 12, 2007. (Ex. 156).

4  While the appeal on the second motion for a new trial was pending in the Nevada Supreme
5  Court, Petitioner filed a state habeas corpus petition in the state district court on August 7, 2006.
6  (Ex. 137). The petition raised twenty-four claims and included a request to stay the state habeas
7  corpus proceedings pending the Nevada Supreme Court's decision on the appeal from the denial of
8  the motion for a new trial. (*Id.*). On November 29, 2007 and January 17, 2008, the state district
9  court held hearings on Petitioner's state habeas corpus petition. (Exs. 15, 158). On March 12, 2008,
10 Petitioner filed a supplement to the state habeas corpus petition. (Ex. 173). On June 24, 2008, the
11 state district court held its third and final hearing on the state habeas corpus petition. (Ex. 177). On
12 October 1, 2008, the state district court entered its findings of fact, conclusions of law, and order
13 denying the state habeas corpus petition. (Ex. 179).

14 Petitioner appealed the denial of his state habeas corpus petition. (Ex. 182). On April 21,
15 2009, Petitioner filed his opening brief. (Ex. 196). Petitioner argued that: (1) the trial court erred in
16 admitting Petitioner's custodial statement at trial; (2) Petitioner's trial counsel was ineffective; (3)
17 Petitioner was deprived of a fair trial based on prosecutorial misconduct, *Brady* violations, and due
18 process violations; (4) the jury was misinstructed as to the theories of liability and trial counsel
19 failed to proposed adequate instructions; and (5) cumulative error. (*Id.*). On September 29, 2010, the
20 Nevada Supreme Court affirmed the denial of the state habeas corpus petition. (Ex. 206). Remittitur
21 issued on October 27, 2010. (Ex. 207).

22 On September 29, 2010, Petitioner filed the present Petition in this Court. (ECF No. 1). The
23 Petition contained thirteen grounds for federal habeas corpus relief. (*Id.*). The Court granted
24 Petitioner's motion to appoint Attorney Lisa Rasmussen to represent him. (ECF No. 6). On May 3,
25 2011, the Court approved the parties' stipulation that Petitioner's counsel would file an amended
26 petition "to add factual support for the claims raised," and that no new claims would be added. (ECF

1  No. 32). On May 3, 2011, Petitioner's counsel filed the Amended Petition ("AP") containing
2  thirteen grounds for relief. (ECF No. 31). On August 1, 2011, Respondents filed the present motion
3  to dismiss the AP. (ECF No. 35).

## II.   DISCUSSION

At the outset, the Court notes that counsel for both parties have failed to comply with Local Rules of Civil Practice 7-4 regarding page limitations on motions and responses. Respondents' motion is 37 pages, and Petitioner's response is 121 pages. Local Rule 7-4 limits such motions and responses to thirty pages. *See* L.R. Civ. Prac. 7-4. Neither party moved for leave to file briefs in excess of the page limitation.

### A.   Respondents' Point 1[2]

Respondents argue generally that the claims in the AP are vague and fail to state a claim. (*See* Mot. 9–11). Respondents argue that the AP contains the same claims from Petitioner's opening brief to the Nevada Supreme Court on appeal from the denial of his state habeas corpus petition. Respondents also argue that the entire AP is vague and confusing.

A federal habeas corpus petition must specify all grounds of relief available to petitioner, state the facts supporting each ground, and state the relief requested. Section 2254 Rule 2(c). While Respondents address individual claims of the AP with more particularity in the remainder of their motion,[3] they do not present sufficiently specific arguments under Point 1 to warrant dismissal of any particular ground for failure to state a claim. Moreover, a federal habeas corpus petition *must* contain the same grounds presented to the highest state court in order to exhaust those grounds for relief. *See, e.g.*, *Picard v. Connor*, 404 U.S. 270, 276 (1971) (holding that a habeas corpus petitioner must "present the state courts with the same claim he urges upon the federal court"). The fact that

---

[2] The Court will address Respondents' arguments consistent with the headings that appear in their motion. Respondents' first three arguments are entitled "Point 1,", "Point 2," and "Point 3." (*See* Mot. 9–17). Respondents' remaining arguments are entitled "Federal Ground 4," etc., and those arguments address Grounds 4, 5, 6, 7, 8, 9, 11, and 12 of the AP. (*See id.* at 17–37).

[3] Respondents present no argument for the dismissal of Grounds 1, 10, or 13 of the AP.

6

1 the a federal habeas corpus petition contains the same claims that a petitioner previously presented
2 to a state supreme court is not a valid reason for dismissal, but is in fact required for exhaustion.
3 Respondents' arguments under Point 1 of the motion to dismiss are therefore rejected.

**B.     Respondents' Point 2**

Under Ground 2, Petitioner argues that "[t]he repeated elicitation of non-testifying co-conspirators' statements against him at trial violated Mr. Johnson's Sixth Amendment rights to confrontation and to a fair trial." (Am. Pet. 29, ECF No. 31). Respondents argue that this claim was procedurally defaulted in the Nevada Supreme Court pursuant to Nevada's contemporaneous objection rule. The Court agrees and finds no cause to excuse the default.

Issues which could have been raised on direct review but which were not raised cannot be brought in a federal habeas corpus action. Such claims are said to be "procedurally defaulted" and cannot be raised later in a collateral attack. There are exceptions to the procedural default rule when a defendant can show: (1) cause and prejudice; or (2) actual innocence. *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) (citing *Bousley v. United States*, 523 U.S. 613, 622 (1998)). "Cause" means "some objective factor external to the defense" that impeded the defendant's efforts to comply with the procedural requirement. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991). Among the reasons that can constitute "cause" are government coercion, *see United States v. Wright*, 43 F.3d 491, 497–99 (10th Cir. 1994), ineffective assistance of counsel, *see McCleskey*, 499 U.S. at 494, and a "reasonable unavailability of the factual or legal basis for the claim," *see id.* Ineffective assistance of counsel constitutes "cause" excusing procedural default only where the failure rises to the level of a constitutional violation under *Strickland*. *United States v. Skurdal*, 341 F.3d 921, 925–27 (9th Cir. 2003) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "Prejudice" means that "the constitutional errors raised in the petition actually and substantially disadvantaged [a defendant's] defense so that he was denied fundamental fairness." *Murray v. Carrier*, 477 U.S. 478, 494 (1986). A showing of prejudice requires demonstration of a "reasonable probability that . . . the result of the proceedings would have been different. A reasonable probability is a probability sufficient to

7

undermine confidence in the outcome." *Vansickel v. White*, 166 F.3d 953, 958–59 (9th Cir. 1999) (quoting *Strickland*, 466 U.S. at 694)).

The Sixth Amendment right to effective assistance of counsel is violated when: (1) counsel's performance was so deficient so as not to constitute the "counsel" guaranteed by the Sixth Amendment; and (2) the deficiency prejudiced the defense by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Stickland*, 466 U.S. at 687. There is a "strong presumption" of reasonable professional conduct. *Id.* at 698. When this presumption is overcome and an attorney's "unprofessional errors" are such that there is a "reasonable probability" the result would have been different had the errors not occurred, the defendant has been deprived of his Sixth Amendment rights. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). "Reasonable probability" is a lower standard than "more likely than not." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). The analysis does not focus purely on outcome. *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). The trial must also have been fundamentally unfair or unreliable. *Williams v. Taylor*, 529 U.S. 362, 391–92 (2000). Counsel's tactical decisions with which a defendant disagrees do not rise to the level of ineffective assistance unless the decisions are so poor as to meet the general test for constitutionally defective assistance. *See District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 129 S. Ct. 2308, 2330 (2009).

Petitioner argues that the "repeated elicitation of non-testifying co-conspirators' statements against him at trial violated Mr. Johnson's Sixth Amendment rights to confrontation and to a fair trial." Petitioner presented this claim to the Nevada Supreme Court on direct appeal, and the Nevada Supreme Court ruled that: "We reject Johnson's assignment of error concerning admission of this testimony. All but three of the references now attacked by Johnson were made without objection. We therefore conclude that Johnson has failed to preserve the issue as to the unchallenged response." (Ex. 104). Relying on the contemporaneous objection rule, the Nevada Supreme Court refused to consider the claim and further found that plain error analysis was unwarranted. (*Id.*).

1   Respondents argue that the Nevada Supreme Court expressly relied on Nevada's
2 contemporaneous objection rule in finding the claim of prosecutorial misconduct waived, and that
3 the rule is an independent state law basis sufficient to bar the claims of prosecutorial misconduct
4 appearing in Ground 2. *See Vang v. Nevada*, 329 F.3d 1069, 1074 (9th Cir. 2003) ("A state
5 procedural bar is 'independent' if the state court explicitly invokes the procedural rule as a separate
6 basis for its decision.") (citing *McKenna v. McDaniel*, 65 F.3d 1483, 1489 (9th Cir. 1995)).  A
7 federal court may only impose a procedural bar on claims if the procedural rule that the state used to
8 deny relief is firmly established and regularly followed. *Ford v. Georgia*, 498 U.S. 411, 423–24
9 (1991); *James v. Kentucky*, 466 U.S. 341, 348–51 (1984).  The state procedural rule used must be
10 clear, consistently applied, and well-established at the time of the petitioner's purported default.
11 *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997); *Calderon v. United States Dist. Court (Bean)*,
12 96 F.3d 112, 129 (9th Cir. 1996).

13   Respondents argue that the contemporaneous objection rule has a long history of application
14 under Nevada common law. *See Parker v. State*, 849 P.2d 1062, 1067 (Nev. 1993); *Dearman v.*
15 *State*, 566 P.2d 407, 409 (Nev. 1977).  Petitioner responds that the contemporaneous objection rule
16 is not a well-established state procedural rule and is therefore inadequate to support a finding of
17 procedural default.  Petitioner argues the Nevada Supreme Court has discretion to address plain error
18 affecting a defendant's substantial rights. *See Herman v. State*, 128 P.3d 469, 474 (Nev. 2006);
19 *Gaxiola v. State*, 119 P.3d 1225 (Nev. 2005); *Gallego v. State*, 23 P.3d 227 (Nev. 2001).  Petitioner
20 argues that the contemporaneous objection rule is therefore not consistently applied and that Ground
21 2 is therefore not procedurally barred from federal habeas corpus review.

22   The fact that the Nevada Supreme Court has excused particular failures to object
23 contemporaneously does not indicate that the rule has not been consistently applied.  As
24 Respondents note, to be adequate, a procedural rule must be applied in the vast majority of cases, not
25 in all cases. *Shumway v. Payne*, 223 F.3d 892, 898 (9th Cir. 2000).  Respondents have cited over ten
26 cases in which the Nevada Supreme Court enforced the contemporaneous objection rule.

Furthermore, Petitioner cites no authority for the proposition that the existence of an exception to a rule necessarily means that the rule has not been consistently applied. Accordingly, the Court finds that Respondents have met their burden of demonstrating that Nevada's contemporaneous objection rule is independent and adequate so as to support a finding that Petitioner has procedurally defaulted his claim set forth in Ground 2.

As to cause and prejudice, Petitioner argues that the procedural default is excused due to an external impediment to trial counsel's ability to comply with the contemporaneous objection rule. Petitioner asserts that "the external factor was the manner in with the State's counsel purposely sought to conceal the manner in which it was eliciting the improper vouching and inadmissible hearsay." (Resp. 33–34, ECF No. 42). But Petitioner has not argued that the State's actions in questioning Detective Hardy prevented counsel from timely objecting during trial. Petitioner does not allege, for example, that the testimony was taken when he and his counsel were absent or otherwise unable to hear the prosecutor's questions. Petitioner essentially argues that "counsel was prevented from objecting because the testimony itself was improper." But a prosecutor's trickery in eliciting inadmissible vouching or hearsay testimony—assuming *arguendo* that is what occurred here—is no external impediment to an objection where the testimony is taken in open court in the presence of counsel. On the contrary, it is a notorious invitation to an objection.

Petitioner also asserts that trial counsel's failure to object constituted ineffective assistance of counsel. For ineffective assistance of counsel to satisfy the cause requirement, the independent claim of ineffective assistance of counsel, itself, must first be presented to the state courts. *Murray*, 477 U.S. at 488–89. In addition, the independent ineffective assistance of counsel claim cannot serve as cause if that claim is itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Here, Petitioner made an independent claim of ineffective assistance of counsel in his state petition, state direct appeal, and in the federal petition. (Exs. 173, 196 (Ground 11(A)).

The Court finds that the Nevada Supreme Court's ruling cannot have been an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1). The Nevada Supreme Court's rejection of

10

Petitioner's ineffective assistance arguments was based upon its finding that Petitioner had failed to raise specific facts concerning ineffective assistance that would entitle him to relief if true. (*See* Ex. 206). Under § 2254(d)(1) review, the Court must consider the record precisely as it appeared to the Nevada Supreme Court. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Petitioner's opening brief to that Court presented conclusory arguments that certain testimony was hearsay under state law but did not explain why Petitioner believed it was hearsay. (Ex. 196). The Nevada Supreme Court therefore rejected that there had been any inadmissible hearsay, and that any hearsay there might have been did not put the outcome of the trial in doubt. The Court finds no cause to excuse default and dismisses Count 2.

### C.    Respondents' Point 3

Respondents argue that Ground 3 of the AP was procedurally defaulted in state court and that the claim is a state law claim not cognizable in a federal habeas corpus action. In Ground 3 of the AP, Petitioner alleges: "The jurors were improperly instructed by the trial court as to the theories of liability and the firearm enhancement in violation of Mr. Johnson's Fifth and Sixth Amendment rights to due process and a fair trial." (Am. Pet. 37). Petitioner argues that one of the four theories upon which the jury could have convicted him in its general verdict for first degree murder (conspiracy) does not permit the deadly weapon enhancement under Nevada law.

To obtain federal habeas corpus relief based on an improper jury instruction, Petitioner must establish that the instruction so infected the entire trial that the resulting conviction violates due process, i.e., that "there was a reasonable likelihood that the jury applied the instruction in a way that violated a [federal] constitutional right." *Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir. 1993). In reviewing jury instructions, the court asks whether the instructions as a whole were misleading or inadequate to guide the jury's deliberation. *U.S. v. Garcia-Rivera*, 353 F.3d 788, 791 (9th Cir. 2003) (citing *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999). An instruction may not be judged in isolation, "but must be considered in the context of the instructions as a whole and the trial record." *Id.*

Petitioner argues that the deadly-weapon enhancement was not available under the alternative conspiracy liability theory presented to the jury. But this is a state law rule, *see Moore v. State*, 27 P.3d 447, 450 (Nev. 2001), and the Nevada Supreme Court rejected this argument on direct appeal based on its interpretation of state law under *Moore*, noting that the deadly weapon enhancements were applied only under the murder charges, and not under the conspiracy charge. (Ex. 104). Petitioner has not adequately alleged that the jury instructions regarding the theories of liability so infected his trial as to result in a denial of due process and a fair trial. He alleges a misapplication of state law by the trial judge in crafting the jury instructions, an argument put to rest by the Nevada Supreme Court on direct appeal. The Court dismisses Ground 3.

### D.     Ground 4

Respondents argue that Ground 4(b) fails to state a claim, or in the alternative, contains unexhausted claims. Respondents also argue that parts of Ground 4 are barred by doctrine of the law of the case. In Ground 4, Petitioner alleges "[m]ultiple errors pursuant to *Brady v. Maryland*, prior to and during the trial, deprived Mr. Johnson of his rights to due process, a fair trial, and a reliable sentence in violation of the Fifth, Sixth, and Eighth Amendments to the United States Constitution, and constitute prosecutorial misconduct." (Am. Pet. 39). Ground 4 contains two subparts: (a) The prosecution purposely and improperly withheld *Brady* material regarding witnesses Parker and Morris; and (b) the state engaged in further *Brady* violations relating to Petitioner's preparation for the motion for a new trial. (*Id.* 39–43).

#### 1.     Cognizability of the Claim

Respondents argue that Ground 4(b) is conclusory and that Johnson only makes the conclusory statement that 'the State' committed *Brady* violations, without making clear whom he means by the word "State" and without presenting any analysis or case law to support his claim that the abovementioned actions violated *Brady*. The Court rejects the argument that "the State" is not adequately identified. Petitioner clearly means to implicate the prosecutor. Respondents address Ground 4(b) independently from the rest of Ground 4. Ground 4(a) addresses the alleged pretrial

12

*Brady* violations, while Ground 4(b) addresses alleged post-trial *Brady* violations. Ground 4 sets forth sufficient facts and law to state a claim for habeas corpus relief.

### 2.   Exhaustion

A federal court will not grant a state prisoner's petition for habeas corpus relief until the prisoner has exhausted his available state remedies for all claims raised. *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Moore,* 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

A habeas corpus petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). The federal constitutional implications of a claim, not just issues of state law, must have been raised in the state court to achieve exhaustion. *Ybarra v. Sumner*, 678 F. Supp. 1480, 1481 (D. Nev. 1988) (citing *Picard*, 404 U.S. at 276)). The state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); s*ee Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir. 1999). Section 2254(b) "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001) (quoting *Rose v. Lundy*, 455 U.S. 509, 520 (1982)).

Respondents argue that Ground 4 is unexhausted because Petitioner did not argue in his opening brief on appeal from the denial of his motion for a new trial the allegations in Ground 4(b) relating to an email from CCDCA, a meeting with the director of the district court administration, that the State had a conflict of interest, and that there were *Giglio* and *Jencks* violations. But each of

13

these allegations are found in Petitioner's opening brief on appeal from the denial of his state habeas corpus petition. (Ex. 196). Because Petitioner presented these issues to the Nevada Supreme Court, they are exhausted.

Respondents further argue that Ground 4(a) is unexhausted. On review, this Court finds that the allegations and arguments made in Ground 4(a) of the AP were also made in Petitioner's opening brief on appeal from the denial of his motion for a new trial and in his opening brief on appeal from the denial of his state habeas corpus petition. (Exs. 135, 196).

Respondents point out differences between Petitioner's opening brief on appeal from the denial of his motion for a new trial and Petitioner's opening brief on appeal from the denial of his state habeas corpus petition. But all claims Petitioner fairly presented to the Nevada Supreme Court are exhausted, no matter the procedural device used to present them or how many additional times they were presented. That only certain claims overlap as between multiple appeals, petitions, or motions to that Court is inapposite.

### 3. Doctrine of the Law of the Case

Respondents argue that portions of Ground 4 are procedurally barred from federal review based on the law of the case doctrine. Respondents cite the Nevada Supreme Court's order affirming the denial of Petitioner's state habeas corpus petition. The relevant portion of the Nevada Supreme Court's order stated: "These claims were considered and rejected in the prior proceedings." (Ex. 206). But "[w]hen a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted. To the contrary, it provides strong evidence that the claim has already been given full consideration by the state courts and thus is *ripe* for federal adjudication." *Cone v. Bell*, 556 U.S. 449, 129 S. Ct. 1769, 1781 (2009).

Of course, "under AEDPA, a prisoner in state custody must file a federal habeas petition within one year from the conclusion of direct review of the criminal conviction." *See Doe v. Busby*, 661 F.3d 1001, 1011 (9th Cir. 2011) (citing 28 U.S.C. § 2244(d)). Petitioner's direct appeal was

14

decided on July 11, 2005, (Ex. 104), and remittitur issued on August 5, 2005 (Ex. 111).  Time to file for a writ of certiorari expired ninety days later on or about November 5, 2005, so Petitioner had until November 4, 2006 to file a federal habeas corpus petition under AEDPA's one-year statute of limitations.  The time to file a federal habeas corpus petition is tolled while a state post-conviction petition is pending, assuming it has been "properly filed." *See id.* § 2244(d)(2).  Petitioner filed his state habeas corpus petition on August 7, 2006, upon which filing the AEDPA limitations period was tolled with approximately ninety days left. (Ex. 137).  Therefore, Petitioner had ninety days remaining to file the present Petition when the Nevada Supreme Court issued its remittitur to the September 29, 2010 denial of that petition on October 27, 2010. (Ex. 207).  Petitioner filed the present Petition on September 29, 2010, the day the Nevada Supreme Court denied the state habeas corpus petition.  The present Petition is therefore timely as to the claims brought on direct review (and not brought in the second motion for a new trial).  Still, because Defendant could have, but did not, raise his *Brady* arguments on direct review, those claims are procedurally defaulted.

### E.     Ground 5

The title of Ground 5 is "Prosecutorial misconduct that prevented Mr. Johnson from obtaining evidence necessary to his motion for new trial violated his due process rights in violation of the Fifth Amendment."  Petitioner alleges that "[t]he pattern of harassment, delay and refusal to respond to Mr. Johnson's discovery requests and subpoenas as described in Ground Four, Section B, supra, constituted prosecutorial misconduct."  Petitioner complains that the State failed to produce certain documents that were only in the possession of the federal authorities.  Respondents argue that Petitioner fails to specify facts that support any *Brady* violation by the State.  Petitioner's second motion for a new trial raised the same *Brady* issues, (Ex. 105), and the Nevada Supreme Court adjudicated those issues when it affirmed the trial court's denial of that second motion for a new trial on November 22, 2006, (Ex. 147), approximately four years before Petitioner brought the present Petition.  Petitioner supplemented his state habeas corpus petition with these claims within one year of remittitur, so the claims are now timely. (Exs. 148, 173).

1  This claim is dismissed for failure to state a claim.  A governmental actor has no federal constitutional or statutory duty to produce documents not in its possession. *See, e.g.*, *United States v. Gatto*, 763 F.2d 1040, 1048 (9th Cir. 1985).  Petitioner presents no claims that the State was in fact in possession of the disputed documents.

### F. Ground 6

Ground Six of the AP states "[t]he trial court's decision to allow witness[es] to testify against Mr. Johnson when information regarding criminal history, motive, and bias of the witnesses had not been disclosed to Mr. Johnson's trial counsel violated his rights to due process and a fair trial under the Fifth and Sixth Amendments."  This claim is dismissed for the same reason as Ground 5: the State had no federal obligation to produce information not in its possession.

### G. Ground 7

In Ground 7, Petitioner asserts "[t]he trial court denied Mr. Johnson's right to due process under the Fifth Amendment by denying his right to compulsory process in his multiple attempts to obtain and conduct discovery necessary to his motion for a new trial."  Respondents contend that Ground 7 fails to state a claim because the United States Supreme Court has never clearly held that the Sixth Amendment Compulsory Process Clause requires the government to produce exculpatory evidence.  The United States Supreme Court has ruled that "[t]he right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States." *Washington v. Texas*, 388 U.S. 14, 18 (1967).  In *Pennsylvania v. Ritchie*, 480 U.S. 39, 55 (1987), the petitioner asserted "that the trial court's ruling prevented him from learning the names of the 'witnesses in his favor,' as well as other evidence that might be contained in the file."  The Court ruled:

> This Court has never squarely held that the Compulsory Process Clause guarantees the right to discover the identity of witnesses, or to require the government to produce exculpatory evidence. Instead, the Court traditionally has evaluated claims such as those raised by Ritchie under the broader protections of the Due Process Clause of the Fourteenth Amendment.

16

1  *Id.* at 56 (citing *United States v. Bagley*, 473 U.S. 667 (1985); *Brady v. Maryland*, 373 U.S. 83
2  (1963)) (citations omitted).  The Court in *Ritchie* went on to note that the applicability of the Sixth
3  Amendment's Compulsory Process Clause is "unsettled" and instead adopted the due process
4  analysis of *Brady v. Maryland* and its progeny. *Id.* at 56.  The allegations regarding the State's
5  failure to produce materials that Petitioner's counsel needed to cross-examine and impeach the
6  testimony of witnesses Parker and Morris, and later, to bring a motion for a new trial, are more
7  appropriately addressed under *Brady v. Maryland* due process analysis.  Indeed, Petitioner made the
8  same allegations of the State's failure to produce materials in Grounds 4 and 5 of the AP, applying
9  *Brady v. Maryland* and its progeny to those allegations.  Because the applicability of the Sixth
10 Amendment's Compulsory Process Clause to the allegations in the instant case are "unsettled," as in
11 *Ritchie*, Petitioner cannot show that the Nevada Supreme Court's rejection of his compulsory
12 process claim is an unreasonable application of clearly-established United States Supreme Court
13 precedent.  As such, Ground 7 is dismissed.

### H.     Ground 8

15 Ground 8 of the amended petition states: "The failure to permit Mr. Johnson's appellate
16 counsel to conduct discovery relevant to Mr. Johnson's motion for new trial violated Johnson's Fifth
17 Amendment rights to due process."  Respondents argue that Ground 8 fails to state a cognizable
18 claim.  The Court agrees.  Apart from some very specific *Brady*-type requirements under the Due
19 Process Clause, discovery in state procedures is a state statutory right, not a due process
20 requirement. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("It does not follow from the
21 prohibition against concealing evidence favorable to the accused [under *Brady*] that the prosecution
22 must reveal before trial the names of all witnesses who will testify unfavorably.  There is no general
23 constitutional right to discovery in a criminal case, and *Brady* did not create one; as the Court wrote
24 recently, 'the Due Process Clause has little to say regarding the amount of discovery which the
25 parties must be afforded. . . .'" (quoting *Wardius v. Oregon*, 412 U.S. 470, 474 (1973))).
26 ///

### I. Ground 9

In Ground 9, Petitioner alleges that "[t]he trial court's denial of Mr. Johnson's motion for new trial violated Mr. Johnson's rights under the Fifth, Sixth, and Eighth Amendments." Respondents argue that parts of Ground 9 are barred by the doctrine of law of the case, citing the Nevada Supreme Court's order affirming the denial of Petitioner's state habeas corpus petition. The relevant portion of the Nevada Supreme Court's order stated: "These claims were considered and rejected in the prior proceedings." (Ex. 206). Again, this affects only the date from which the AEDPA limitation runs, not the fact of exhaustion. Petitioner raised the claims contained in Ground 9 in his appeal from the denial of his motion for a new trial and supplemented his state habeas corpus petition with it. The claim is timely. However, the claim fails for the same reasons as Grounds 5 and 6: it is based upon the State's refusal to turn over documentation in the possession of the federal government that the State did not have.

### J. Ground 11

In Ground 11, Petitioner argues that "[r]eversal is required because Mr. Johnson lacked effective assistance of counsel at trial." Petitioner alleges several instances of ineffective assistance of counsel: (a) trial counsel's failure to object to the hearsay statements of non-testifying co-conspirators violated Mr. Johnson's Sixth Amendment right to the effective assistance of counsel; (b) trial counsel's failure to adequately investigate the facts and circumstances surrounding substantive guilt issues (ballistics, state's witnesses, victim background) and /or his failure to present a defense ballistics expert violated Mr. Johnson's Sixth Amendment right to the effective assistance of counsel; (c) trial counsel's failure to adequately investigate the mitigating circumstances of Mr. Johnson's background and failure present those circumstances in the penalty phase of Mr. Johnson's trial violated Johnson's Sixth Amendment right to the effective assistance of counsel; (d) trial counsel's failure to adequately challenge video evidence, audio evidence, and ballistics evidence admitted against Mr. Johnson at trial violated Sixth Amendment right to the effective assistance of counsel; (e) trial counsel's failure to request a continuance of the August 6, 2003 trial date violated

Mr. Johnson's rights to due process, a fair trial, and to the effective assistance of counsel pursuant to the Fifth and Sixth Amendments; (f) trial counsel's failure to compel production of federal documents related to co-conspirators and other witnesses (Parker, Morris, et al) violated Mr. Johnson's rights to due process, a fair trial, and to the effective assistance of counsel pursuant to the Fifth and Sixth Amendments; (g) trial counsel failed to request polling of the jurors despite his knowledge of juror misconduct; (h) trial counsel's advice to waive the right to a jury for the purpose of the penalty hearing constituted ineffective assistance of counsel; and (i) trial counsel's failure to negotiate a plea agreement for something less than life without parole, times four, and/or a cooperation agreement, violated Mr. Johnson's Sixth Amendment right to the effective assistance of counsel. (ECF No. 31, at pp. 67-79).

As noted, *supra*, Petitioner could have brought his ineffective assistance of trial counsel claims on direct appeal, and those claims are therefore defaulted.

### K.     Ground 12

Ground 12 states: "The [state] district court erred by refusing to allow Mr. Johnson a hearing to present the claims in his [state] petition for a writ of habeas corpus."  This count is dismissed.  "[A] petition alleging errors in the state post-conviction review process is not addressable through [federal] habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989).

**CONCLUSION**

IT IS HEREBY ORDERED that respondents' motion to dismiss (ECF No. 35) is GRANTED IN PART AND DENIED IN PART, as follows:

1. Grounds 2–9 and 11–12 of the Amended Petition are DISMISSED WITH PREJUDICE.

2. Respondents' motion to dismiss grounds 1, 10, and 13 of the Amended Petition is DENIED.

IT IS FURTHER ORDERED that respondents SHALL FILE AN ANSWER to the Amended Petition within thirty (30) days from the entry of this order.  The answer shall include substantive arguments on the merits as to Grounds 1, 10, and 13 in the Amended Petition.

IT IS FURTHER ORDERED that petitioner SHALL FILE his reply to the answer no later than thirty (30) days after being served with the answer.

IT IS SO ORDERED.

Dated this 14th day of March, 2012.

_____
ROBERT C. JONES
United States District Judge