1
2
3
4
5                    **UNITED STATES DISTRICT COURT**
6                        **DISTRICT OF NEVADA**
7
8    JAMAAL JOHNSON,
9          Petitioner,                          3:10-cv-0610-RCJ-VPC
10   vs.
                                                **ORDER**
11   RENEE BAKER, *et al.*, [1]
12         Respondents.
13   _____/
14
15   Introduction
16        This habeas corpus action is brought by Jamaal Johnson, a Nevada prisoner serving multiple
17   prison sentences, including four sentences of life in prison without the possibility of parole.
18   Johnson's federal habeas corpus action is before this court on two motions seeking reconsideration
19   of orders of this court dismissing certain claims, and also on the merits of the habeas petition. The
20   court will deny Johnson's motions for reconsideration, will deny Johnson's habeas corpus petition,
21   and will deny Johnson a certificate of appealability in all respects.
22   Factual Background and Procedural History
23        Johnson was convicted, after a jury trial, in Nevada's Eighth Judicial District Court, in Clark
24   County, Nevada, on November 20, 2003, of burglary, conspiracy to commit robbery, two counts of
25   _____
26          [1] Renee Baker is substituted for her predecessor, E.K. McDaniel, as Warden of Ely State Prison.
     Fed. R. Civ. P. 25(d).

1   robbery with use of a deadly weapon, and two counts of first degree murder with use of a deadly

2   weapon.  *See* Judgment of Conviction, Exhibit 60.[2]

3         On Johnson's direct appeal, the Nevada Supreme Court summarized the background of the

4   case as follows:

5               During the late evening of September 26, 2001, three individuals entered an
        apartment in Las Vegas, Nevada, pursuant to a plan to rob the occupants of drugs and
6       money.  During the course of the robbery, the intruders shot and killed two of the
        intended victims.  Based upon information received from the Secret Witness hotline
7       and other sources, and after booking Johnson on an unrelated charge, police
        questioned Johnson regarding the robbery and homicides.  Following the
8       administration of *Miranda* [footnote omitted] warnings, Johnson confessed to his
        participation in the robbery and murders in a taped statement.

9
               The State charged Johnson with the above-mentioned charges.  At trial, the
10      State presented evidence establishing the corpus delicti of the murders, testimony
        from a co-offender describing Johnson's role in the offenses, testimony from an
11      acquaintance to tacit admissions of involvement by Johnson, and the audiotape of
        Johnson's confession.  The investigating detective described the course of the
12      investigation and how Johnson became a suspect.  Johnson himself testified in his
        own defense and denied any complicity, claiming that all of his knowledge of the
13      offenses came "from the street."

14                                        *     *     *

15             The jury found Johnson guilty of one count of conspiracy, one count of
        burglary with possession of a firearm, two counts of robbery with the use of a deadly
16      weapon, and two counts of first-degree murder with the use of a deadly weapon.  The
        district court sentenced Johnson to the following terms of imprisonment:  Count I,
17      burglary while in possession of a firearm, 72 to 180 months; Count II, conspiracy to
        commit robbery, 24 to 72 months; Count III, robbery with the use of a deadly
18      weapon, 72 to 180 months plus an equal and consecutive term for use of a deadly
        weapon; Count IV, 72 to 180 months plus an equal and consecutive term for use fo a
19      deadly weapon; Count V, murder with the use of a deadly weapon, life without the
        possibility of parole plus an equal and consecutive sentence of life without the
20      possibility of parole for use of a deadly weapon; Count VI, life without the possibility
        of parole plus an equal and consecutive sentence of life without the possibility of
21      parole for use of a deadly weapon.  The district court ordered concurrent imposition
        of the sentences under Counts I, II and III.  It imposed all other sentences
22      consecutively.

23   Order of Affirmance, Exhibit 104, pp. 1-3.

24

25   _____

26         [2] Unless otherwise stated, the exhibits referred to in this order are those filed by respondents and
     located in the electronic record for this case at ECF Nos. 10 through 24, and those filed by Johnson and
     located in the electronic record for this case at ECF No. 57.

1        On August 26, 2003, Johnson filed a motion for new trial, based on alleged juror
2   misconduct related to a newspaper article and television newscasts that reported that the United
3   States Attorney had issued arrest warrants for members of the "Rolling 60's" gang (Exhibit 43).  The
4   trial court heard and denied that motion for a new trial (Exhibits 48, 50).

5        Johnson appealed from the judgment of conviction (Exhibit 57).  On July 11, 2005, the
6   Nevada Supreme Court issued an order affirming the conviction (Exhibit 104).

7        While Johnson's direct appeal was pending, on July 12, 2005, Johnson filed a second motion
8   for a new trial (Exhibits 105-09).  On November 3, 2005, after a hearing, the state district court
9   denied that motion (Exhibits 114, 117).  Johnson appealed the denial of his second motion for a new
10  trial (Exhibit 116).  On November 22, 2006, the Nevada Supreme Court affirmed the denial of
11  Johnson's second motion for a new trial (Exhibit 147).

12       While the appeal on the second motion for a new trial was pending in the Nevada Supreme
13  Court, Johnson filed a petition for writ of habeas corpus in the state district court on August 7, 2006
14  (Exhibit 137).  On November 29, 2007, and January 17, 2008, the state district court held hearings
15  on Johnson's state habeas corpus petition.  (Exhibits 155, 158).  On March 12, 2008, Johnson filed a
16  supplement to the state habeas corpus petition (Exhibit 173).  On June 24, 2008, the state district
17  court held its third and final hearing on the state habeas corpus petition (Exhibit 177).  On
18  October 1, 2008, the state district court entered its findings of fact, conclusions of law, and order,
19  denying the habeas corpus petition (Exhibit 179).

20       Johnson appealed the denial of his state habeas corpus petition (Exhibit 182).  The Nevada
21  Supreme Court affirmed on September 29, 2010 (Exhibit 206).

22       On September 29, 2010, Johnson filed his federal habeas corpus petition in this court (ECF
23  No. 1).  The court granted Johnson's motion to appoint counsel (ECF No. 6).  On May 3, 2011,
24  Johnson's counsel filed an amended petition, containing thirteen grounds for relief (ECF No. 31).

25

26

3

1    Respondents filed a motion to dismiss on August 1, 2011 (ECF No. 35).  On March 14, 2012,

2  the court granted that motion in part and denied it in part (ECF No. 49).  The court dismissed

3  Grounds 2, 3, 4, 5, 6, 7, 8, 9, 11, and 12, leaving Grounds 1, 10 and 13 to be adjudicated.

4    On May 25, 2012, Johnson filed a motion for reconsideration (ECF No. 52), asserting that

5  the dismissal of the claims of ineffective assistance of counsel in Ground 11 was erroneous.  On

6  March 15, 2013, the court granted in part, and denied in part, the motion for reconsideration (ECF

7  No. 69).  The court ruled that Grounds 11A, 11C, and 11D, would not be dismissed; the court denied

8  the motion with respect to Grounds 11B, 11E, 11F, 11G, 11H, and 11I, reaffirming the dismissal of

9  those claims.

10    On June 15, 2012, respondents filed an answer (ECF No. 60), and on May 22, 2013,

11  respondents filed an amended answer (ECF No. 73), responding to Grounds 1, 10, 11A, 11C, 11D

12  and 13 of Johnson's amended petition.  On July 15, 2013, Johnson filed a reply (ECF No. 80).

13    On July 15, 2013, Johnson filed a motion for reconsideration (ECF No. 78), requesting

14  reconsideration of the dismissal of Grounds 11E and 11F.  On August 28, 2013, respondents filed an

15  opposition to that motion (ECF No. 82).  Johnson replied on October 9, 2013 (ECF No. 88).

16    On July 15, 2013, Johnson also filed another motion for reconsideration (ECF No. 79),

17  requesting reconsideration of the dismissal of Grounds 2, 4, 5, 6, 9, and 12.  On September 6, 2013,

18  respondents filed an opposition to that motion (ECF No. 84).  Johnson replied on October 10, 2013

19  (ECF No. 89).

20  Motion for Reconsideration Regarding Grounds 11E and 11F

21    In Ground 11E of his amended habeas petition, Johnson claims:  "Trial counsel's failure to

22  request a continuance of the August 6, 2003 trial date violated Mr. Johnson's rights to due process, a

23  fair trial and to the effective assistance of counsel pursuant to the Fifth and Sixth Amendments."

24  Amended Petition (ECF No. 31), p. 74.  Johnson adds:

25         It was evident that on August 6, 2003, Mr. Johnson's defense counsel did not
         have the discovery to which it was entitled pursuant to *Brady* and regarding Parker
26         and Morris. The State conceded as much, but said "We cannot make the U.S.
         Attorney's Office give it to [us]." Defense counsel should have asked to continue the

4

1    trial at that point to allow him to conduct additional investigation to obtain the needed
     discovery. It was also evident that there was a federal investigation and there would
2    have been a great deal of discovery available in that case as well. The failure to
     request the continuance upon a known need to conduct additional investigation [and]
3    to see discovery to which Mr. Johnson was clearly entitled constituted ineffective
     assistance of counsel. The trial court may have denied the request, but trial counsel
4    did not even ask. This deprived Mr. Johnson of his constitutional guarantees to due
     process, to a fair trial, to the right to confront and cross examine witnesses against
5    him, to the effective assistance of counsel, to present a defense and to a reliable
     sentence in violation of his Fifth, Sixth, Eight and Fourteenth Amendments to the
6    United States Constitution.

7    *Id*. at 74-75.

8         In Ground 11F, Johnson claims: "Trial counsel's failure to compel production of federal

9    documents related to coconspirators and other witnesses (Parker, Morris, *et al*) violated Mr.

10   Johnson's rights to due process, to a fair trial and to the effective assistance of counsel

11   pursuant to the Fifth and Sixth Amendments."  Amended Petition, p. 75.  Johnson adds:

12        The facts set forth above are incorporated herein by reference. Mr. Johnson's
     counsel knew that there was discovery to which he was entitled and he knew this
13   discovery was critical to the proper and effective cross-examination of the State's
     witnesses. Despite the fact that the State wrongfully withheld this discovery, trial
14   counsel should have taken efforts to obtain it through other channels prior to trial.
     Arguably, he did not have time to undertake such efforts prior to trial with respect to
15   Ms. Morris, as those issues arose only five days prior to trial. However, that goes to
     his failure to request a continuance, discussed in this Ground, Section E, *supra*.
16   Nonetheless, Mr. Johnson's counsel was ineffective for not seeking leave of the court
     to undertake the proper appropriate discovery and investigation on its own given the
17   State's failure to comply with its *Brady* obligations.

18        A hearing was required to establish what trial counsel knew and when he
     knew it, so that the district court could determine whether trial counsel undertook
19   reasonable efforts to obtain or compel the [production] of discovery related to the
     federal "snitch" witnesses. The district court refused to allow a hearing. This was
20   error. See Ground Twelve, *infra*.

21   *Id*.

22        On Johnson's appeal of the denial of his second new trial motion, the Nevada Supreme Court

23   ruled that Johnson was not prejudiced by the State's failure to produce the alleged *Brady*[3] material.

24   *See* Order of Affirmance, Exhibit 147.  The Nevada Supreme Court ruled as follows:

25

26   _____

     [3]  *Brady v. Maryland*, 373 U.S. 83 (1963).

     5

Demarco Parker testified at Johnson's trial. Parker had been charged in state and federal court for his role in the crimes. Parker agreed to plead guilty in federal court. The state charges against him were subsequently dropped. Monique Morris also testified against Johnson. Morris had recently pleaded guilty to unrelated federal charges.

*   *   *

Johnson's alleged newly discovered evidence consists of documents pertaining to Parker's criminal history, the federal government's agreement to refrain from seeking the death penalty against him in exchange for his guilty plea, his grand jury testimony, his statements to the FBI, Morris's criminal history, her federal plea agreement, the benefits she received for pleading guilty, her grand jury testimony, and her statements to the FBI. Johnson contends the State violated *Brady v. Maryland* [footnote omitted] by failing to disclose these documents, that his right to effective cross-examination was violated by the failure, and that the State committed prosecutorial misconduct by failing to correct Morris's testimony about the terms of her plea agreement.

*   *   *

Without deciding whether the State actually or constructively possessed the information, we conclude that disclosure of the information would not, collectively or individually, have made a different outcome "reasonably probable" or "reasonably possible." For the same reasons, the information was not material under *Mortensen* [*v. State*, 115 Nev. 273, 986 P.2d 1105 (1999)]. Parker testified on direct examination that he was serving a federal life-without-parole sentence for his role in the crimes and that he had prior convictions for robbery, possession of a controlled substance, and ex-felon in possession of a firearm. The jury also learned that his federal plea agreement provided that the government could request a reduced sentence if he cooperated in the prosecution of another. Appellate counsel asserts that further evidence would have disclosed that Parker had a prior charge and/or conviction for escape, but we conclude that putting this additional information before the jury had no likelihood of affecting the outcome of Johnson's trial.

Aside from appellate counsel's assertion, there is no indication in the record that the federal government agreed not to seek the death penalty against Parker in exchange for his guilty plea. Nor would such information have been material given the substantial impeachment evidence presented.

Johnson sets forth no facts to demonstrate that Parker's or Morris's grand jury testimony or statements to the FBI exculpated Johnson or were different from their trial testimony. Johnson also fails to demonstrate that Morris had a prior criminal history, other than the federal charges she pleaded guilty to, which were discussed at Johnson's trial.

The State did not call Morris to testify until its rebuttal case, after Johnson testified that he spoke to her after the killings but did not really remember the substance of their conversation. Morris testified that she had read her guilty plea agreement but did not remember what it said. She did not believe that it required her to testify at Johnson's trial or that she could get any benefit from the federal government for testifying. She then testified that she had spoken to Johnson about

the killings and said she had heard that Parker "froze up" during the incident.  She said Johnson indicated that was true.  On cross-examination, Morris acknowledged that Johnson's responses to her questions were mostly in "grunts and moans" and hat Parker's "freezing up" was widely known around the neighborhood.  She also said Johnson never told her that he played a role in the crimes and never said he had been there or done anything.  Disclosure of Morris's federal plea agreement may have enabled defense counsel to further challenge Morris's credibility, but even if this had occurred, we conclude there was no probability of a different outcome at trial had he done so given the insignificance of Morris's rebuttal testimony and the weight of the other evidence establishing Johnson's guilt.

Next, Johnson contends the State committed prosecutorial misconduct by failing to correct Morris's testimony about the terms of her federal plea agreement.  That agreement provided the possibility that her sentence could be reduced if she cooperated; she testified that she was unfamiliar with the terms of the agreement and denied that she was receiving any benefit from testifying.

* * *

Even assuming that Morris deliberately lied and the State knew or should have known of the lie, we conclude there was no reasonable likelihood that the false testimony could have affected the outcome of the trial.

* * *

Finally, Johnson contends cumulative error requires the reversal of his conviction.  We disagree.  Although we cannot establish from the record whether any of the material sought was constructively or actually in the State's possession, we conclude that none of the material had a reasonable possibility of changing the outcome of Johnson's trial.

*Id*. at 2-8.

Johnson subsequently raised these claims -- the same claims that are asserted as Grounds 11E and 11F in his amended petition in this case -- in his state habeas petition, and the state district court ruled as follows:

The defendant's claims in grounds 22 and 23 that his counsel's failure to request a continuance to obtain alleged *Brady* material is denied because the Supreme Court already found that the alleged material would not have affected the outcome, so there can be no prejudice suffered.

Findings of Fact, Conclusions of Law and Order, Exhibit 179, p. 7.  And, on the appeal from that ruling, the Nevada Supreme Court ruled as follows:

Appellant raises several claims that trial counsel was ineffective for: ... failing to request a continuance of trial.  [Footnote omitted.]  Appellant fails to allege

7

1    specific facts that, if true, entitle him to relief, *Hargrove v. State*, 100 Nev. 498, 502-
     03, 686 P.2d 222, 225 (1984), and thus fails to demonstrate he received ineffective
2    assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984);
     *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984). Further,
3    appellant fails to demonstrate that he was entitled an evidentiary hearing on these
     issues. *See Hargrove*, 100 Nev. at 502-03, 686 P.2d at 225. Therefore, the district
4    court did not err in denying these claims.

5         Next, appellant raises numerous claims that were previously raised in his
     direct appeal, his motion for new trial, or on appeal from his motion for new trial: ...
6    appellant was deprived of a fair trial because of prosecutorial misconduct and
     violations of *Brady v. Maryland*, 373 U.S. 83 (1963). These claims were considered
7    and rejected in the prior proceedings. The doctrine of law of the case prevents further
     litigation of these issues and cannot be avoided by more detailed and precisely
8    focused arguments made upon reflection of prior proceedings. *Hall v. State*, 91 Nev.
     314, 315-16, 535 P.2d 797, 799 (1975). Accordingly, the district court did not err in
9    denying these claims.

10   Order of Affirmance, Exhibit 206, pp. 1-2.

11        This court dismissed Grounds 11E and 11F in its March 14, 2012, order (ECF No. 49), and

12   then reaffirmed the dismissal of those claims in its March 15, 2013, order (ECF No. 69). Johnson

13   now moves, under Federal Rule of Civil Procedure 60(b), for further reconsideration, asking the

14   court to reconsider its ruling on these claims for a second time (ECF No. 78).

15        Rule 60(b) of the Federal Rules of Civil Procedure authorizes a court to reconsider and

16   provide relief from an order or judgment on the basis of "(1) mistake, inadvertence, surprise, or

17   excusable neglect; (2) newly discovered evidence...; (3) fraud (whether previously called intrinsic or

18   extrinsic), misrepresentation, or misconduct by an opposing party; ... or (6) any other reason that

19   justifies relief." Fed. R. Civ. P. 60(b).

20        The court has considered Johnson's arguments with respect to the dismissal of Grounds 11E

21   and 11F, and has revisited its rulings in that regard. The court concludes that, while these claims

22   arguably are not subject to dismissal, both claims plainly must fail on their merits, rendering futile

23   any reconsideration of their dismissal.

24        In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two

25   prong test for analysis of claims of unconstitutional ineffective assistance of counsel: a petitioner

26   claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's

8

1   representation "fell below an objective standard of reasonableness," and (2) that the attorney's

2   deficient performance prejudiced the defendant such that "there is a reasonable probability that, but

3   for counsel's unprofessional errors, the result of the proceeding would have been different."

4   *Strickland*, 466 U.S. at 688, 694.

5       As is described above, the Nevada Supreme Court ruled that there was no reasonable

6   likelihood that the alleged *Brady* material would have affected the outcome of his trial.  *See* Order of

7   Affirmance, Exhibit 147.  In light of the evidence at trial, and the nature of the material allegedly

8   withheld, the Nevada Supreme Court's ruling in that regard was not contrary to, or an unreasonable

9   application of, clearly established federal law, as determined by the Supreme Court of the United

10  States, and was not based on an unreasonable determination of the facts in light of the evidence

11  presented in the state-court proceedings.  *See* 28 U.S.C. § 2254(d); *see also* Exhibits 105-109, 113-

12  117, 135, 138, 142, 147.  It is plain that Johnson cannot make the required showing of prejudice

13  under *Strickland* to support Grounds 11E and 11F.  The court, therefore, denies Johnson's motion

14  for reconsideration regarding those claims.

15  Motion for Reconsideration Regarding Grounds 2, 4, 5, 6, 9, and 12

16      In the order entered March 14, 2012, this court dismissed Grounds 2, 4, 5, 6, 9, and 12 (as

17  well as Grounds 3, 7, 8, and 11).  Order entered March 14, 2012 (ECF No. 49), pp. 7-11.  Johnson

18  now requests that the court reconsider the dismissal of Grounds 2, 4, 5, 6, 9, and 12.

19      This motion for reconsideration was made, in conjunction with his reply, sixteen months

20  after the entry of the order Johnson would have the court reconsider.  A motion to reconsider an

21  order under Rule 60(b)(1), (2) or (3), based on mistake, inadvertence, fraud, misrepresentation, or

22  misconduct, must be made within no more than a year after the entry of the order.  Fed. R. Civ. P.

23  60(b)(1).  Johnson's motion, to the extent he makes the motion under 60(b)(1), (2) or (3), is plainly

24  untimely.

25      There is no explicit time limitation to bring a motion under Rule 60(b)(6), for "any other

26  reason that justifies relief," but such a motion must be made within a reasonable time.  *Id.*

9

1   Moreover, Rule 60(b)(6) is "to be 'used sparingly as an equitable remedy to prevent manifest

2   injustice and is to be utilized only where extraordinary circumstances prevented a party from taking

3   timely action to prevent or correct an erroneous judgment.'" *Harvest v. Castro*, 531 F.3d 737, 749

4   (9th Cir.2008), quoting *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th

5   Cir.2006), and *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir.2005)).  The court finds

6   that, to the extent he makes the motion for reconsideration under Rule 60(b)(6), Johnson's motion

7   was not filed within a reasonable time after the March 14, 2012 order.

8          Johnson's explanation for his tardy filing of this motion for reconsideration is as follows:

9                 The need for the instant motion only became apparent during the
          undersigned's preparation of Mr. Johnson's reply to the State's answer to Mr.
10         Johnson's amended petition which is due July 22, 2013.  [Footnote: *See* Petitioner's
          Reply to the State's Amended Answer to Amended Petition for Writ of Habeas
11         Corpus (CR 73) filed concurrently herewith; see also CR77.]  The instant motion is
          timely in that it is being brought within a reasonable time. Because the grounds for
12         reconsideration herein address clear errors of fact and law, failure to consider and
          grant the motion will result in manifest injustice, while consideration and resolution
13         of the issues presented herein will correct clear errors and clarify the record for
          further appellate proceedings to the degree that they are necessary.

14

15   Motion for Reconsideration of Order Dismissing Grounds 2, 4, 5, 6, 9 and 12 (ECF No. 79), p. 2.

16   Johnson does not explain, however, why he could not have discovered the grounds for his motion for

17   reconsideration before the preparation of his reply, which, of course, concerns the claims not

18   dismissed.  The motion for reconsideration of the dismissal of Grounds 2, 4, 5, 6, 9 and 12, is based

19   on several different grounds, and not on any one particular factual or legal point that Johnson's

20   counsel may have discovered when working on the reply.  Johnson has not shown that

21   "extraordinary circumstances prevented a party from taking timely action." *See Harvest,* 531 F.3d at

22   749.

23          The court, therefore, denies Johnson's motion for reconsideration of the dismissal of

24   Grounds 2, 4, 5, 6, 9 and 12.

25

26

1    <u>Johnson's Remaining Claims</u>

2         <u>Standard of Review</u>

3         Because this action was initiated after April 24, 1996, the amendments to 28 U.S.C. § 2254

4    enacted as part of the Antiterrorism and Effective Death Penalty Act (AEDPA) apply.  *See Lindh v.*

5    *Murphy,* 521 U.S. 320, 336 (1997); *Van Tran v. Lindsey*, 212 F.3d 1143, 1148 (9th Cir.2000),

6    overruled on other grounds by *Lockyer v. Andrade*, 538 U.S. 63 (2003).

7         28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

8              An application for a writ of habeas corpus on behalf of a person in custody
         pursuant to the judgment of a State court shall not be granted with respect to any
9         claim that was adjudicated on the merits in State court proceedings unless the
         adjudication of the claim –
10
              (1)  resulted in a decision that was contrary to, or involved an unreasonable
11         application of, clearly established Federal law, as determined by the Supreme Court
         of the United States; or
12
              (2)  resulted in a decision that was based on an unreasonable determination of
13         the facts in light of the evidence presented in the State court proceeding.

14    28 U.S.C. § 2254(d).

15         A state court decision is contrary to clearly established Supreme Court precedent, within the

16    meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set

17    forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

18    indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

19    different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v.*

20    *Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

21         A state court decision is an unreasonable application of clearly established Supreme Court

22    precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

23    governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

24    principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at

25    413).  The "unreasonable application" clause requires the state court decision to be more than

26

1   incorrect or erroneous; the state court's application of clearly established law must be objectively

2   unreasonable.  *Id*. (*quoting Williams*, 529 U.S. at 409).

3       The analysis under 28 U.S.C. § 2254(d) looks to the law that was clearly established by

4   United States Supreme Court precedent at the time of the state court's decision.  *Wiggins v. Smith*,

5   539 U.S. 510, 520 (2003).

6       With respect to questions of fact, "a determination of a factual issue made by a State court

7   shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

8   presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

9       <u>Analysis</u>

10      <u>Ground 1</u>

11      In Ground 1 of his amended petition, Johnson claims that his "custodial statement was made

12  in violation of his right against self-incrimination pursuant to the Fifth Amendment to the United

13  States Constitution, and the admission of the statement at trial violated his Fifth and Sixth

14  Amendment rights."  Amended Petition, p. 23.

15      The Nevada Supreme Court ruled on this claim, on Johnson's direct appeal, as follows:

16          Johnson argues that his audiotaped statement to police was involuntary
        because the interrogating officer, Detective Hardy, misrepresented the offenses to
17      which the *Miranda* waiver was to apply, that Johnson did not understand that he was
        waiving his rights with respect to the murder charges, and that Hardy conducted a
18      coercive, unrecorded and un-Mirandized pre-interview before the recorded interview
        during which Johnson confessed.  Johnson also claims that the officer obtained the
19      confession based upon false assurances that Johnson would not be arrested for the
        murders on the evening of the interview.  These claims were litigated below during a
20      pretrial suppression hearing.  The district court ruled against Johnson on these issues
        and admitted the audiotaped statement into evidence.
21
            A district court's factual findings relating to the "scene- and action-setting"
22      circumstances surrounding an interrogation are entitled to deference and will be
        reviewed for clear error.  [Footnote: *Rosky v. State*, 121 Nev. ___, ___, 111 P.3d 690,
23      694 (2005).]  However, we review a district court's ultimate determination regarding
        the voluntariness of a confession de novo.  [Footnote: *Id*.]  Factors relevant to the
24      voluntariness determination are as follows:  (1) youth of the accused, (2) lack of
        education or low intelligence of the accused, (3) lack of any advice regarding
25      constitutional rights, (4) length of detention, (5) repeated and prolonged nature of
        questioning, and (6) infliction of physical punishment, including deprivation of food
26      or sleep.  [Footnote: *Alward v. State*, 112 Nev. 141, 155, 912 P.2d 243, 252 (1996).]
        A suspect's prior experience with law enforcement is also a relevant consideration.

1   [Footnote: *Rosky*, 121 Nev. at ___, 111 P.3d at 696.]  The prosecution has the burden
    of proving by a preponderance of the evidence that the statement was voluntary.
2   [Footnote: *See Rosky*, 121 Nev. at ___, 111 P.3d at 695.]

3           Aside from the transcript of Johnson's statement, the primary evidence
    introduced during the suppression hearing consisted of Detective Hardy's testimony.
4   The district court was entitled to assess his credibility, weigh the evidence, and
    render its decision accordingly.  Although the district court did not specifically state
5   its opinion regarding whether or not a coercive un-Mirandized pre-interview
    transpired, its decision on the issue of voluntariness implies that it found against
6   Johnson on this issue.

7           A balance of factors leads us to conclude that the district court did not err in
    its determination that Johnson's confession was voluntary.  Although Johnson was 19
8   at the time and was momentarily confused as to whether the interview concerned the
    murder case or the separate matter for which he was originally taken into custody, a
9   transcript of the interview reflects that Detective Hardy cleared up that confusion.
    The transcript further reveals that Johnson understood the basic nature of his rights.
10  This was further supported by the fact that police had administered *Miranda*
    warnings to Johnson in connection with previous unrelated incidents.

11

12          Going further, the recorded statement clearly demonstrates Johnson's
    knowledge that the police were investigating the two murders, and that the *Miranda*
13  warnings applied to any statements made concerning them.  Also, while Johnson
    claims that Officer Hardy pre-played some scenarios prior to the interview, there is
14  no indication from either Hardy or Johnson that Hardy elicited the recorded statement
    following an initial un-Mirandized confession.  [Footnote: *See Missouri v. Seibert*,
15  124 S. Ct. 2601, 2608-11 (2004).]

16          Finally, any assurances concerning when and if Hardy would arrest Johnson
    are irrelevant to our review of the admissibility of the recorded statement.

17  Order of Affirmance, Exhibit 104, pp. 3-5.

18          The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an

19  unreasonable application of, clearly established federal law, as determined by the Supreme Court of

20  the United States, and was not based on an unreasonable determination of the facts in light of the

21  evidence presented in the state-court proceedings.

22          Johnson makes no argument that the state courts misapplied United States Supreme Court

23  precedent, and this court determines that the state courts did in fact properly apply well-established

24  federal law, based on Supreme Court precedent, in considering the voluntariness of Johnson's

25  statement.

26

13

1    With regard to Johnson's claim that he was confused about what crimes the police were

2 investigating when he was questioned, the state courts reasonably found that Johnson knew that the

3 police were investigating the double homicide.  The evidence presented at trial showed that Johnson

4 knew, from the beginning of the questioning, that the questioning would be about the double

5 homicide.  The following exchange occurred soon after the interview began:

6       Q [Detective Ken Hardy]:  Okay, and you understand that, uh, we're gonna
        ask you questions in reference to a double homicide that occurred on Jackson Street,
7       um, more specifically 205 Jackson, apartment number one and it occurred on
        September 26th, where two individuals were killed, um, you understand that that's
8       what we're talking to you about?

9       A [Johnson]:  Yeah.

10 Exhibit 210, p. 3.  There is nothing in the record supporting Johnson's claim that he did not

11 understand that the questioning would involve the double homicide, and that the *Miranda* warnings

12 applied to questioning about the double homicide.  Johnson's claim in this regard is meritless.

13    With regard to Johnson's claim that the police conducted a coercive, unrecorded and

14 un-Mirandized pre-interview before the recorded interview, the state courts' finding to the contrary

15 was reasonably based upon the evidence at trial.  *See* Testimony of Detective Ken Hardy, Exhibit

16 37, pp. 90-92, 95-96, 100-05, 112-22, 133-38.  The evidence was that Johnson was not told what to

17 say before the recorded interview began, and that, before the recorded interview began, there were

18 no representations made to Johnson that if he answered questions in any particular manner he would

19 not be charged with murder.  *See id*. at 104-05, 121-22, 135.

20    The court will deny habeas corpus relief with respect to Ground 1.

21          Ground 10

22    In Ground 10, Johnson claims that "[t]he prosecution's knowing presentation of false

23 testimony violated Mr. Johnson's rights to due process to a fair trial and to the right to confront and

24 cross examine witnesses against him under the Fifth and Sixth Amendments to the United States

25 Constitution."  Amended Petition, p. 64.  Specifically, Johnson claims, in Ground 10, that the

26

14

1   prosecution elicited false testimony from witness Monique Morris to the effect that she was not

2   receiving any benefit for her testimony against him. *Id.* at 64-67.

3          On the appeal from the denial of his second motion for a new trial, the Nevada Supreme

4   Court denied this claim, as follows:

5                 Next, Johnson contends that the State committed prosecutorial misconduct by
       failing to correct Morris's testimony about the terms of her federal plea agreement.
6       That agreement provided the possibility that her sentence could be reduced if she
       cooperated; she testified that she was unfamiliar with the terms of the agreement and
7       denied that she was receiving any benefit from testifying.  "If the prosecution uses
       perjured testimony which it knew or should have knows was perjurious, a conviction
8       obtained by such testimony is 'fundamentally unfair' and 'must be set aside if there is
       any reasonable likelihood that the false testimony could have affected the judgment
9       of the jury.'" [Footnote: *Jimenez* [*v. State*, 112 Nev. 610, 622, 918 P.2d 687, 694
       (1996)] (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).]  Even assuming
10      that Morris deliberately lied and the State knew or should have known of the lie, we
       conclude there was no reasonable likelihood that the false testimony could have
11      affected the outcome of the trial.

12  Order of Affirmance, Exhibit 147, pp. 6-7.

13         This court agrees.  As the Nevada Supreme Court stated in its order on Johnson's direct

14  appeal:  "[T]he issue of guilt was not close in light of Johnson's detailed statement regarding his

15  participation in the planning and execution of the robbery and his presence during the homicides,"

16  and because "other testimony implicated his participation in this incident."  Order of Affirmance,

17  Exhibit 104, p. 8.

18         Morris' testimony was not critical to the prosecution's case.  Morris was called by the

19  prosecution as a rebuttal witness, and she testified as follows regarding a conversation she had with

20  Johnson after the murders:

21      Q.      Could you tell the ladies and gentlemen of the jury the substance of that
       conversation?
22
       A.      I picked him up, he was walking on Owens, and I picked him up and I told
23      him what "D-Loc" had told me and what other people were saying as far as what
       happened in there.  And I talked to him about Demarco freezing up, and he said that
24      that was true.  He just said that it all was really fucked up.  I took him to the bank and
       then I took him home.
25
       Q.      Okay.  So he indicated to you that "Manish" did freeze up?
26
       A.      Yes.

                                                      15

1    Q.    And he indicated to you that there was a robbery just gone bad?

2    A.    Yes.

3    Testimony of Monique Morris, Exhibit 37, p. 166.  That testimony did little more than suggest that

4    Johnson was at the scene of the murders.  And, even that was not explicit, in that Morris did not say

5    outright that Johnson said he was there – as opposed to hearing from some other source about what

6    happened.  Moreover, the defense effectively cross-examined Morris, and to some degree succeeded

7    in undermining her credibility.  *See* Testimony of Monique Morris, Exhibit 37, pp. 167-73.  On

8    cross-examination, the defense made clear that Johnson did not make any sort of admission to

9    Morris that he participated in the murders.  *See id*. at 170.  On cross-examination, the defense also

10   questioned Morris about her federal plea agreement, suggesting the possibility that she might get a

11   reduction of her federal sentence as a result of her testimony.  *See id*. at 170-73.  In the end, Morris'

12   testimony added very little, if anything, of value to the prosecution to the evidence already presented

13   against Johnson, and the cross examination of Morris weakened what little value her testimony

14   might have had for the prosecution.  In light of the other evidence presented at trial – especially in

15   light of Johnson's incriminating statement to the police – there is no reasonable possibility that

16   Morris' testimony affected the outcome of Johnson's trial.

17       The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an

18   unreasonable application of, clearly established federal law, as determined by the Supreme Court of

19   the United States, and was not based on an unreasonable determination of the facts in light of the

20   evidence presented in the state-court proceedings.  The court will deny habeas corpus relief with

21   respect to Ground 10.

22           Ground 11A

23       In Ground 11A, Johnson claims that his federal constitutional rights were violated as a result

24   of ineffective assistance of trial counsel, because his trial counsel "did not object to hearsay

25   statements presented at trial."  Amended Petition, p. 71.

26

16

1    Johnson raised this claim in state court, in his state habeas petition.  *See* Petitioner's

2    Supplement to Habeas Petition, Exhibit 173, pp. 28-29 (Ground 6 in that petition).  There, his entire

3    claim (including the heading) was as follows:

4        Mr. Johnson was deprived of his constitutional guarantee to due process, to a
         fair trial, to the effective assistance of counsel, and to a reliable sentence under the

5        Sixth and Fourteenth Amendments to the United States Constitution when his
         attorney failed to object to the hearsay statements of non-testifying co-conspirators

6        elicited by the State at trial.

7        The Nevada Supreme Court, in affirming Mr. Johnson's conviction in Appeal
         I [Johnson's direct appeal] stated that it would not review some of the hearsay

8        statements of secret witness and Tony Carr that were admitted at trial where trial
         counsel failed to object.  The failure to object precluded Mr. Johnson from proper

9        review of this issue on direct appeal and violated his federal constitutional rights as
         set forth herein.  Furthermore, the failure to object to the hearsay evidence from

10       "secret witness" and the vouching evidence affected Mr. Johnson's right to a fair and
         impartial jury, his right to due process and his right to confront and cross examine

11       witnesses against him in violation of the Fifth and Sixth Amendments to the United
         States Constitution.

12

13   *Id*.; *see also* Petition for Writ of Habeas Corpus, Exhibit 137, pp. 22-23.  The State noted, in

14   response, that, on direct appeal, the Nevada Supreme Court had held that most of the statements

15   complained of did not amount to hearsay, and argued that, in light of that ruling, Johnson could not

16   persuasively argue that had counsel made such objections there was a reasonable probability that the

17   results would have been different.  State's Opposition to Defendant's Supplement to Habeas

18   Petition, Exhibit 176, pp. 17-18.  At a hearing regarding the petition, counsel for the State argued

19   that the claims of ineffective assistance of counsel were nothing more than bare allegations, and not

20   enough to entitle Johnson to an evidentiary hearing.  *See* Transcript, Exhibit 177, p. 4.  At that

21   hearing, the state district court judge stated that the petition would be denied, and that "[t]he bare

22   allegations don't rise to the level of ... needing a hearing."  *Id*. at 5-6.  In its written order denying

23   the petition, the state district court stated: "The defendant did not show that he was prejudiced by his

24   counsel's failure to object to hearsay statements of secret witnesses and Tony Carr."  Findings of

25   Fact, Conclusions of Law and Order, Exhibit 179, p. 6.  In its order, the state district court stated

26   further: "Defendant is not entitled to an evidentiary hearing as all of his ineffective assistance of

17

1    counsel claims are bare naked allegations." *Id*. at 7.  And, in a footnote, the state district court

2    added:

3           Claims asserted in a petition for post-conviction relief must be supported with
           specific factual allegations, which if true, would entitle the petitioner to relief.
4           "Bare" and "naked" allegations unsupported by specific facts are insufficient to
           entitle relief. *Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984).

5

6    *Id* at 7 n.4.

7           Johnson appealed, and on appeal added no further factual detail. *See* Appellant's Opening

8    Brief, Exhibit 196, pp. 28-29; Appellant's Reply Brief, Exhibit 204, pp. 11-12.  The Nevada

9    Supreme Court ruled as follows:

10          Appellant raises several claims that trial counsel was ineffective for: failing to
        challenge evidence at trial ....  [Footnote omitted.]  Appellant fails to allege specific
11      facts that, if true, entitle him to relief, *Hargrove v. State*, 100 Nev. 498, 502-03, 686
        P.2d 222, 225 (1984), and thus fails to demonstrate he received ineffective assistance
12      of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v.
        Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984).  Further, appellant fails to
13      demonstrate that he was entitled an evidentiary hearing on these issues.  *See
        Hargrove*, 100 Nev. at 502-03, 686 P.2d at 225.  Therefore, the district court did not
14      err in denying these claims.

15   Order of Affirmance, Exhibit 206, pp. 1-2.

16          Given the *pro forma* manner in which Johnson presented this claim in state court, without

17   detailed factual allegations, and without proffering any evidence in support of the claim, the state

18   courts' summary rejection of the claim was appropriate.  Johnson did not, in state court, identify the

19   particular testimony that his counsel should have challenged, did not describe in any detail the

20   objections that should have been made vis-a-vis any particular testimony, did not provide any

21   meaningful legal analysis specific to any particular objection to any particular testimony, and did not

22   provide analysis of any alleged prejudice to him caused by any particular testimony. *See* Order

23   entered March 14, 2012 (ECF No. 49), pp. 10-11.  Johnson's attempt to now amplify this claim in

24   federal court, by making such factual allegations and seeking an opportunity to attempt to

25   substantiate them with evidence, is contrary to the rule of *Cullen v. Pinholster*, 131 S. Ct. 1388

26   (2011).

18

1     On the record before it, the Nevada Supreme Court's denial of this claim was not contrary to,

2 or an unreasonable application of, clearly established federal law, as determined by the Supreme

3 Court of the United States, and was not based on an unreasonable determination of the facts in light

4 of the evidence presented in the state-court proceedings.   The court will deny habeas corpus relief

5 with respect to Ground 11A.

6                              Ground 11C

7     Johnson's claim in Ground 11C is, in its entirety (including the heading), as follows:

8            Trial counsel's failure to adequately investigate the mitigating circumstances
      of Mr. Johnson's background and [failure] to present those circumstances in the
9     penalty phase of Mr. Johnson's trial violated Mr. Johnson's Sixth Amendment right
      to the effective assistance of counsel.

10

11           Trial counsel did not conduct investigation regarding Mr. Johnson's
      background, his family, his involvement with the Rollin' 60's, his education, his drug
12    use, his susceptibility to others, or his psychological status.  No mitigating evidence
      was presented during the penalty phase and there is mitigating evidence that could
13    have been presented and which may have yielded a sentence of something less than
      life without parole.

14           While the record is self-evident (See. Ex. 211, Sentencing Transcript) as to
      what was not presented, the district court refused to allow a hearing so that Mr.
15    Johnson could present testimony from trial counsel to confirm, for this court's
      review, that none of the efforts were undertaken.  *See supra*.

16

17 Amended Petition, p. 72.

18           Johnson raised this claim in state court, in his state habeas petition.  *See* Petitioner's

19 Supplement to Habeas Petition, Exhibit 173, pp. 29, 31 (Grounds 7 and 9 in that petition).  There,

20 his entire claim, including the headings, was as follows:

21           Mr. Johnson was deprived of his constitutional guarantees to due process, to
      the effective assistance of counsel and to a reliable sentence under the Fifth, Sixth,
22    Eighth and Fourteenth Amendments to the United States Constitution as a result of
      his trial counsel's failure to adequately investigate the mitigating circumstances of
23    Mr. Johnson's background for presentation in the penalty phase of his trial.

24           Trial counsel did not conduct investigation regarding Mr. Johnson's
      background, his family, his involvement with the Rollin 60's, his education, his drug
25    use, his susceptibility to others, or his psychological status.  No mitigating evidence
      was presented during the penalty phase and there is mitigating evidence that could
26    have been presented and which may have yielded a sentence of something less than
      life without parole.

                                        19

1          A hearing is necessary to resolve this issue.

2                                    *    *    *

3          Mr. Johnson was denied his constitutional guarantees to due process, to a fair
       trial, to the effective assistance of counsel, trial by an impartial jury and to a reliable
4      sentence under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United
       States Constitution by his trial counsel's failure to present adequate mitigating
5      evidence during the penalty phase....

6                                    *    *    *

7          At the sentencing hearing, trial counsel presented virtually no mitigating evidence on
       Mr. Johnson's behalf.  The court had various options with regard to Mr. Johnson's
8      sentence and it selected the most severe penalty, life without the possibility of parole.
       Mitigating evidence could have been presented that would have presented a
9      substantial argument in favor of a sentence other than life without the possibility of
       parole (4 consecutive sentences).  The failure to present mitigating evidence ... fell
10     below the minimum standards of due process and ... constitute the ineffective
       assistance of counsel.

11         A hearing is required to resolve this issue.

12

13  *Id.*; *see also* Petition for Writ of Habeas Corpus, Exhibit 137, pp. 24-25, 27-28.  In response, in the

14  state district court, the State argued:

15         Here, Defendant has failed to specify exactly what would have been said regarding
       his "background, family, involvement with the street gang the Rollin' 60's, his
16     education, his drug use, his susceptibility to others, or his psychological status" and
       who would have testified to it that would have made it reasonably probable that he
17     would have received a reduced sentence.

18                                   *    *    *

19         Given the evidence presented against him at trial, Defendant has failed to show what
       his counsel should have investigated that would have produced a different result.
20     *Molina v. State*, 120 Nev. 185, 87 P.3d 533 (2004).

21  State's Opposition to Defendant's Supplement to Habeas Petition, Exhibit 176, p. 18.  At a hearing

22  regarding the petition, counsel for the State argued that the claims of ineffective assistance of

23  counsel were nothing more than bare allegations, and not enough to entitle Johnson to an evidentiary

24  hearing.  *See* Transcript, Exhibit 177, p. 4.  At that hearing, the state district court judge stated that

25  the petition would be denied, and that "[t]he bare allegations don't rise to the level of ... needing a

26  hearing."  *Id*. at 5-6.  In its written order denying the petition, the state district court stated: "The

20

defendant has not shown that as to grounds 7 and 9 his counsel's representation fell below an objective standard of reasonableness or that he was prejudiced by the attorney's alleged failure to investigate and present mitigation evidence during penalty phase and advise defendant to waive a determination of the penalty phase by the jury on the charges of first-degree murder."  Findings of Fact, Conclusions of Law and Order, Exhibit 179, p. 6.  In its order, the state district court stated further:  "Defendant is not entitled to an evidentiary hearing as all of his ineffective assistance of counsel claims are bare naked allegations."  *Id*. at 7.  And, in a footnote, the state district court added:

> Claims asserted in a petition for post-conviction relief must be supported with specific factual allegations, which if true, would entitle the petitioner to relief. "Bare" and "naked" allegations unsupported by specific facts are insufficient to entitle relief.  *Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984).

*Id* at 7 n.4.

Johnson appealed, and on appeal added no further factual detail.  *See* Appellant's Opening Brief, Exhibit 196, p. 29; Appellant's Reply Brief, Exhibit 204, pp. 11-12.  On appeal, in his opening brief, Johnson's entire argument regarding this claim was as follows:

> Trial counsel did not conduct investigation regarding Mr. Johnson's background, his family, his involvement with the Rollin' 60's, his education, his drug use, his susceptibility to others, or his psychological status.  No mitigating evidence was presented during the penalty phase and there is mitigating evidence that could have been presented and which may have yielded a sentence of something less [than] life without parole.

*See* Appellant's Opening Brief, Exhibit 196, p. 29.  The Nevada Supreme Court ruled as follows:

> Appellant raises several claims that trial counsel was ineffective for: ... failing to adequately investigate facts and circumstances.... [Footnote omitted.]  Appellant fails to allege specific facts that, if true, entitle him to relief, *Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984), and thus fails to demonstrate he received ineffective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984).  Further, appellant fails to demonstrate that he was entitled an evidentiary hearing on these issues.  *See Hargrove*, 100 Nev. at 502-03, 686 P.2d at 225. Therefore, the district court did not err in denying these claims.

Order of Affirmance, Exhibit 206, pp. 1-2.

1    The state courts' summary denial of this claim was plainly correct.  Johnson did not in state

2    court – and still does not here in federal court – described any mitigating evidence that could have

3    been presented at his sentencing hearing.  *See Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir.1996),

4    *cert. denied*, 522 U.S. 971 (1997) (to show prejudice, under *Strickland*, from trial counsel's failure

5    to develop and present mitigation evidence at sentencing, petitioner must show what mitigation

6    evidence could have been presented).  Moreover, Johnson did not in state court – and does not here

7    in federal court – describe any evidence that he would present at an evidentiary hearing regarding

8    this claim.  This claim is meritless.

9    The Nevada Supreme Court's denial of this claim was not contrary to, or an unreasonable

10   application of, clearly established federal law, as determined by the Supreme Court of the United

11   States, and was not based on an unreasonable determination of the facts in light of the evidence

12   presented in the state-court proceedings.  The court will deny habeas corpus relief with respect to

13   Ground 11C.

14            Ground 11D

15   In Ground 11D, Johnson claims that "[t]rial counsel's failure to adequately challenge video

16   evidence, audio evidence and ballistics evidence admitted against Mr. Johnson at trial violated

17   Mr. Johnson's Sixth Amendment right to the effective assistance of counsel."  Amended Petition, p.

18   73.  Johnson adds: "trial counsel permitted dozens of prejudicial photographs to be admitted into

19   evidence when 10 would have sufficed."  *Id*.  He also complains:

20            Trial counsel permitted Monique Morris to discuss a video and/or audio tape
              that she had taken of Biddle and Mr. Johnson.  (Ex. 37: pages 167, 173.)  The video
21            was not available or it was available and was blank as to the audio, "We're talkinga
              bout something we just don't have."  (*Id*.)  These tapes should not have been
22            discussed as they were either statements by Biddle that constituted hearsay or they
              could not be authenticated and had no relevance because the audio was blank.
23            Ultimately, there was a stipulation regarding the tape.  (*Id*.)

24   *Id*.

25

26

22

1     Johnson also reasserts in Ground 11D the same claim that he asserts in Ground 11A.  *Id*. at

2  73-74.  As is discussed above, the court determines that Ground 11A is without merit, and, for the

3  same reasons, this part of Ground 11D fails.

4     With regard to trial counsel's alleged failure to challenge ballistics evidence, in his reply,

5  Johnson for the first time asserts factual allegations meant to support this part of Ground 11D.

6  Reply (ECF No. 80), pp. 78-81.  There is no indication that these factual allegations, in support of

7  this otherwise vague claim, were asserted in state court.  *See* Petitioner's Supplement to Habeas

8  Petition, Exhibit 173, pp. 30, 32.  These factual assertions, then, are barred by the rule of *Cullen v.*

9  *Pinholster*, 131 S. Ct. 1388 (2011).  Furthermore, the court will not consider such factual assertions

10  advanced for the first time in the petitioner's reply.  *See Delgadillo v. Woodford*, 527 F.3d 919, 930

11  n. 4 (9th Cir.2008) (holding that reply not proper pleading to raise additional grounds for relief or

12  amend petition).  The court, therefore, rejects this part of Ground 11D.

13     With respect to trial counsel's alleged failure to challenge the admission of unfairly

14  prejudicial photographs, there is no showing that any specific factual allegations supporting this

15  claim were ever presented in state court.  *See* Petitioner's Supplement to Habeas Petition, Exhibit

16  173, p. 32.  In state court – as in this court – Johnson's entire claim in this regard is:  "Trial counsel

17  permitted dozens of prejudicial photographs to be admitted into evidence, when 10 photos would

18  have sufficed."  *Id*.  Johnson did not in state court, and he does not here in federal court, so much as

19  identify the photographs that he alleges to have been unfairly prejudicial.  The state supreme court

20  understandably ruled that Johnson "fail[ed] to allege specific facts that, if true, entitle him to relief ...

21  and thus fails to demonstrate he received ineffective assistance of counsel."  Order of Affirmance,

22  Exhibit 206, pp. 1-2.  This part of Ground 11D is patently meritless.

23     Johnson raised in his state habeas corpus petition the claim that his trial counsel was

24  ineffective for failing to challenge Morris' testimony about the video or audio tape.  *See* Petitioner's

25  Supplement to Habeas Petition, Exhibit 173, p. 32 (Ground 10 in that petition).  There, his entire

26  claim in that regard was as follows:

1
2
3
4

> Trial counsel permitted Monique Morris to discuss a video tape and an audio/video tape that she had taken of Darreal Biddle and of Mr. Johnson.  The latter was not available or it was available and it was blank as to the audio.  The audio tapes/video tapes should not have been discussed as they were either statements made by Darreal Biddle that were improper hearsay OR (in the latter), they could not be authenticated and had no relevance because they had no audio.

5

*Id.*; *see also* Petition for Writ of Habeas Corpus, Exhibit 137, pp. 29-30.  At a hearing regarding the

6

petition, counsel for the State argued that the claims of ineffective assistance of counsel were

7

nothing more than bare allegations, and not enough to entitle Johnson to an evidentiary hearing.

8

*See* Transcript, Exhibit 177, p. 4.  At that hearing, the state district court judge stated that the

9

petition would be denied, and that "[t]he bare allegations don't rise to the level of ... needing a

10

hearing."  *Id*. at 5-6.  In its written order denying the petition, the state district court stated: "The

11

defendant has not shown that his counsel's failure to challenge evidence would have affected the

12

outcome of the trial or been effective, thus ground 10 fails."  Findings of Fact, Conclusions of Law

13

and Order, Exhibit 179, p. 6.  In its order, the state district court stated further:  "Defendant is not

14

entitled to an evidentiary hearing as all of his ineffective assistance of counsel claims are bare naked

15

allegations."  *Id*. at 7.  And, in a footnote, the state district court added:

16
17

> Claims asserted in a petition for post-conviction relief must be supported with specific factual allegations, which if true, would entitle the petitioner to relief.  "Bare" and "naked" allegations unsupported by specific facts are insufficient to entitle relief.  *Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984).

18

*Id* at 7 n.4.

19

Johnson appealed, and on appeal added no further factual detail.  *See* Appellant's Opening

20

Brief, Exhibit 196, pp. 27-29; Appellant's Reply Brief, Exhibit 204.  The Nevada Supreme Court

21

ruled as follows :

22
23
24
25

> Appellant raises several claims that trial counsel was ineffective for: failing to challenge evidence at trial .... [Footnote omitted.]  Appellant fails to allege specific facts that, if true, entitle him to relief, *Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984), and thus fails to demonstrate he received ineffective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984).  Further, appellant fails to demonstrate that he was entitled an evidentiary hearing on these issues.

26

24

1        *See Hargrove*, 100 Nev. at 502-03, 686 P.2d at 225.  Therefore, the district court did
not err in denying these claims.

2

3 Order of Affirmance, Exhibit 206, pp. 1-2.

4        Now, in his reply (ECF No. 80) in this federal habeas corpus case, apparently for the first

5 time in any court, Johnson specifically identifies the testimony that he believes his counsel should

6 have challenged.  In that respect, here again, Johnson's claim is contrary to the rule of *Cullen v.*

7 *Pinholster*, 131 S. Ct. 1388 (2011).

8        At any rate, the court has carefully examined the testimony of Morris, the argument of the

9 parties regarding this claim in state court, and the ruling of the Nevada Supreme Court, and the court

10 determines that the Nevada Supreme Court's denial of this claim was not contrary to, or an

11 unreasonable application of, clearly established federal law, as determined by the Supreme Court of

12 the United States, and was not based on an unreasonable determination of the facts in light of the

13 evidence presented in the state-court proceedings.  The court will deny habeas corpus relief with

14 respect to Ground 11D.

15                 Ground 13

16        In Ground 13, Johnson claims that "[c]umulative error, including prosecutorial misconduct,

17 deprived Mr. Johnson of his right to the effective assistance of counsel, to due process, to a fair trial

18 and to a reliable sentence in violation of Mr. Johnson's Fifth, Sixth and Eighth Amendment rights."

19 Amended Petition, p. 80.

20        As there is no showing of error, Johnson's cumulative error claim fails.  The court will deny

21 relief with respect to Ground 13.

22 Certificate of Appealability

23        The standard for issuance of a certificate of appealability calls for a "substantial showing

24 of the denial of a constitutional right."  28 U.S.C. §2253(c).  The Supreme Court has interpreted

25 28 U.S.C. §2253(c) as follows:

26

1

2

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The Johnson must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

3

4   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79

5   (9th Cir. 2000).  The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*,

6   537 U.S. 322 (2003).  The Court stated in that case:

7

8

9

> We do not require Johnson to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus.  Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that Johnson will not prevail.  As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The Johnson must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

10

11

12   *Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

13          The court has considered the issues raised by Johnson, with respect to whether they satisfy

14   the standard for issuance of a certificate of appeal, and the court determines that none of his claims

15   satisfy that standard.  The court will deny Johnson a certificate of appealability.

16          **IT IS THEREFORE ORDERED** that the Clerk shall update the docket in this case to

17   reflect that Renee Baker is substituted for her predecessor, E.K. McDaniel, as the respondent

18   Warden of Ely State Prison.

19          **IT IS FURTHER ORDERED** that petitioner's Motion for Reconsideration of Order

20   Dismissing Grounds 11(E) and 11(F) (ECF No. 78) is **DENIED**.

21          **IT IS FURTHER ORDERED** that petitioner's Motion for Reconsideration of Order

22   Dismissing Grounds 2, 4, 5, 6, 9 and 12 (ECF No. 79) is **DENIED**.

23          **IT IS FURTHER ORDERED** that Johnson's First Amended Petition for Writ of Habeas

24   Corpus (ECF No. 31) is **DENIED**.

25

26

26

1    **IT IS FURTHER ORDERED** that the Clerk of the Court shall **ENTER JUDGMENT**

2  **ACCORDINGLY.**

3    **IT IS FURTHER ORDERED** that petitioner is **DENIED** a certificate of appealability.

4

5    Dated this 31st day of January, 2014.

6

7    _____

8    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26